**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5553-16T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOSE A. CORREA,
a/k/a ALBERTO MORALES,
DAVID SANCHEZ,
JOSE PEPE,
JOSE A. CORRERA,
JOSE M. CORREA, and
JOSE MORALES,

     Defendant-Appellant.

_____

Submitted December 12, 2018 – Decided December 28, 2018

Before Judges Nugent and Mawla.

On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment No. 14-12-0187.

Lustberg Law Offices, LLC, attorneys for appellant (Adam M. Lustberg, of counsel and on the brief; Edward J. Mullins, III, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Arielle E. Katz, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Jose Correa appeals from a July 21, 2017 judgment of conviction for first-degree possession of a controlled dangerous substance (CDS) with intent to distribute. He challenges various pre-trial determinations relating to the denial of a motion to suppress and a motion to reveal the identity of a confidential informant (CI). We affirm.

The following facts are taken from the record. In February 2014, Detective Hugo Ribeiro, of the New Jersey State Police, met with a CI regarding information about narcotic sales occurring in Elizabeth. The CI advised there was a Hispanic male, approximately 5'6", 220 pounds, and forty years old, distributing cocaine and heroin under the name of "Jose," or "Hov," from his apartment. This man was later identified as defendant.

Ribeiro met with the CI to arrange for a controlled purchase of drugs from defendant. The CI was searched to confirm he did not possess any drugs and was then provided with funds to purchase drugs from defendant. Detectives observed the CI use a telephone to call defendant and ask if he had cocaine for sale. Defendant responded he had several kilos of heroin and was awaiting an

additional delivery of cocaine. Defendant told the CI to come to his apartment. Detectives maintained visual surveillance as the CI traveled to defendant's residence to make the purchase.

Defendant was observed exiting the residence to meet with the CI, then re-entering it. After the purchase, the CI returned to meet with detectives at a separate location. There, the CI informed detectives defendant had sold him cocaine in exchange for the funds provided by the detectives.

The aforementioned information was recited in Ribeiro's affidavit of application for a search warrant of defendant's residence. The search warrant was authorized and executed the same day. When detectives entered the residence, defendant ran to the rear of the apartment and began flushing suspected drugs down the toilet. A search of the home yielded the following:

- Storage room: four boxes of glassine envelopes stamped "Frito Lays," plastic wrap, a porcelain plate with white residue, scotch tape, toothbrushes, measuring spoons and rubber bands, a blender, plastic zip lock bags with white residue, two sifters, four coffee grinders with white residue, a digital scale, a vacuum sealer, and one box of ear loop masks.

- Garage: twelve clear plastic bags containing cocaine (approximately 825 grams), a press, a High Efficiency Particulate Air (HEPA) mask, a

3

blender, four aluminum trays with white powder residue, a black leather bag containing various metal components for presses, and two vacuum sealers.

- Master bedroom: ten clear plastic bags containing heroin (10.145 oz.), an unlabeled prescription bottle containing sixty oxycodone tablets, an unlabeled prescription bottle containing ninety-four oxycodone tablets, multiple stamps for marking heroin envelopes, a computer tower connected to several security cameras on the premises, three security cameras, various bank documents, and $14,540.

Defendant was subsequently arrested and indicted on ten drug-related offenses. He filed a motion to suppress the evidence from the search and to compel the State to reveal the identity of the CI. This motion and a subsequent motion for reconsideration were denied. Separately, defendant filed a motion seeking a hearing to challenge the probable cause basis for the search warrant, which was also denied.

In January 2017, defendant entered a guilty plea to first-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1), (b)(1). Defendant was sentenced, in accordance with the plea agreement, to eleven years

imprisonment, with a five-year period of parole ineligibility. This appeal followed.

Defendant raises the following points on appeal:

POINT I

THE TRIAL JUDGE ERRONEOUSLY FOUND THAT THE INFORMATION CONTAINED IN DETECTIVE RIBEIRO'S WARRANT AFFIDAVIT AMOUNTED TO PROBABLE CAUSE; THE MOTION TO SUPPRESS SHOULD HAVE BEEN GRANTED.

POINT II

IN THE ALTERNATIVE, BECAUSE OF A MATERIAL OMISSION IN THE APPLICATION FOR THE WARRANT, DEFENDANT IS ENTITLED TO A HEARING PURSUANT TO [FRANKS V. DELAWARE.[1]]

POINT III

THE JUDGE'S REFUSAL TO REVEAL THE IDENTITY OF THE C.I. WAS ERRONEOUS AND UNFAIRLY LIMITED DEFENDANT'S ABILITY TO CHALLENGE THE LEGALITY OF THE SEARCH WARRANT.

---

[1] 438 U.S. 154 (1978).

A-5553-16T3

I.

Review of a warrant's validity "is guided by the flexible nature of probable cause and by the deference shown to issuing courts that apply that doctrine." State v. Sullivan, 169 N.J. 204, 217 (2001). Warrant applications

> should be read sensibly rather than hypercritically and should be deemed legally sufficient so long as they contain [] factual assertions which would lead a prudent [person] to believe that a crime [has] been committed and that evidence . . . of the crime [is] at the place sought to be searched.
>
> [Ibid. (alterations in original) (quoting State v. Laws, 50 N.J. 159, 173 (1967)).]

A reviewing judge should pay "substantial deference" to the discretionary determination of the judge who issued the warrant. State v. Hemenway, 454 N.J. Super. 303, 322 (App. Div. 2018). "We are bound to uphold the factual findings made by the Criminal Part judge in support of his ruling denying defendant's motion to suppress, provided they are 'supported by sufficient credible evidence in the record.'" Ibid. (quoting State v. Gamble, 218 N.J. 412, 424 (2014)). "Thus, we can disturb or reject the judge's findings of fact 'only if they are so clearly mistaken that the interests of justice demand intervention and correction.'" Ibid. (quoting State v. Elders, 192 N.J. 224, 244 (2007)).

6

Defendant argues Ribeiro's affidavit was entirely dependent upon the credibility of the CI, whose reliability police failed to substantiate. Thus, defendant asserts there was no probable cause to issue the warrant. We disagree.

"The standards for determining probable cause to arrest and probable cause to search are identical." State v. Moore, 181 N.J. 40, 45 (2004) (citing State v. Smith, 155 N.J. 83, 92 (1998)). "The application for a warrant must satisfy the issuing authority 'that there is probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched.'" State v. Boone, 232 N.J. 417, 426 (2017) (emphasis in original) (quoting State v. Jones, 179 N.J. 377, 388 (2004)). "Probable cause exists when, considering 'the totality of the circumstances,' a person of 'reasonable caution' would be justified in believing that evidence of a crime exists in a certain location. State v. Smith, 212 N.J. 365, 388 (2012) (quoting Schneider v. Simonini, 163 N.J. 336, 361 (2000)).

"Information related by [a CI] may constitute a basis for probable cause." Smith, 155 N.J. at 92. "Such information, though hearsay, may provide a sufficient basis for probable cause, 'so long as a substantial basis for crediting the hearsay is presented.'" Ibid. (quoting State v. Novembrino, 105 N.J. 95, 111 (1987)).

The Supreme Court has adopted a two-prong test to determine the sufficiency of an informant's tip. "First, the tip must include information that apprises the magistrate of the basis for the informant's allegations (the 'basis-of-knowledge' prong); and, second, the affiant must inform the magistrate of the basis for his reliance on the informant's credibility (the 'veracity' prong)." Novembrino, 105 N.J. at 111-12 (citing Illinois v. Gates, 462 U.S. 213, 267 (1983)).

The "basis-of-knowledge" prong requires a fact sensitive analysis and consideration of the totality of the circumstances, including: controlled drug purchases, positive test results of narcotics obtained in a controlled purchase, records corroborating a CI's account of the location of drug activity, the experience of the officers in drug investigations, and the suspect's criminal record. See Jones, 179 N.J. at 390-91.

As to the second prong, a CI's veracity "may be satisfied by demonstrating that the informant has proven reliable in the past, such as providing dependable information in previous police investigations." State v. Keyes, 184 N.J. 541, 555 (2005) (citing Sullivan, 169 N.J. at 213). "Importantly, '[a] deficiency in one of those factors may be compensated for, in determining the overall

reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.'" Ibid. (quoting State v. Zutic, 155 N.J. 103, 110–11 (1998)).

Notably, in Keyes, the Court noted a "controlled [drug] buy is [] central to our analysis whether the corroborating facts presented in the police affidavit adequately support the confidential informant's veracity and basis of knowledge." Id. at 559. "[A]though no one corroborating fact is outcome determinative, a successful controlled drug buy is generally very persuasive evidence." Ibid. (citing Sullivan, 169 N.J. at 217). "When coupled with at least one additional corroborating circumstance, a controlled buy typically suffices to demonstrate that the police, under the totality of the circumstances, had probable cause." Ibid. (citing Jones, 179 N.J. at 392).

In Keyes, the Court noted the following corroborating evidence:

> The substance obtained during the controlled buy field-tested positive for cocaine. A criminal history check of [defendant] revealed that he had four felony convictions, including convictions for manufacturing and distributing drugs. The police routinely received complaints from area residents about the constant drug activity [at his residence]. Moreover, the police observed known drug users entering an apartment on the west side of the [residence] and exiting shortly after. The police have detected lookouts in the housing project that alert drug dealers when police approach the area. In addition, the affiant has extensive experience and education in drug-related activities. Beyond peradventure, the facts in this appeal, considered

9

collectively, constitute more corroboration than is present in the typical search and seizure case. That finding reinforces both the informant's veracity and his basis of knowledge and leads us to the conclusion that probable cause existed in the totality of these circumstances.

[Ibid. (emphasis added).]

The facts here are analogous to Keyes. As we noted, following the tip provided by the CI, detectives maintained constant visual surveillance on defendant as he was observed exiting his residence to meet with the CI and provided the CI with cocaine in exchange for the funds provided by police. These observations were all noted in Ribeiro's affidavit, which also set forth defendant's criminal history, including prior convictions for distribution of CDS. Therefore, the controlled drug buy, and defendant's criminal history, satisfied the basis-of-knowledge prong of the two-part test.

Furthermore, we reject defendant's claims the CI was unreliable because police failed to indicate whether they had previously utilized the CI. We also reject the assertion the CI was unreliable because the substance defendant gave him had not been field-tested to confirm it was cocaine. "[P]ast instances of reliability do not conclusively establish an informant's reliability[]" and a deficiency in any of the factors establishing probable cause may be compensated by other strong showings of reliability, namely, by evidence of the controlled

drug buy. Id. at 555 (quoting Smith, 155 N.J. at 94). Here, there was much more evidence to corroborate the CI's reliability than merely the CI's history and the identity of the substance purchased from defendant. The CI's description of defendant, his residence, and the nature of the product sold by defendant were proven to be truthful. Moreover, detectives overheard the entire transaction in which defendant offered to sell the CI cocaine and stated he was expecting a shipment of more cocaine.

For these reasons, there was probable cause to issue the search warrant. The motion judge's denial of defendant's motion to suppress the evidence from the search was not clearly mistaken.

## II.

"When reviewing a claim with respect to an issue of suppression, a reviewing court must accept the factual findings made by the trial court in analyzing the question, provided those factual findings are 'supported by sufficient credible evidence in the record.'" Smith, 212 N.J. at 387 (citing State v. Handy, 206 N.J. 39, 44 (2011)). "In considering the legal conclusions to be drawn from those facts, our review is de novo." Ibid.

Defendant argues he was wrongfully denied a Franks hearing because there was a material dispute regarding the facts in Ribeiro's affidavit.

11

Specifically, defendant points to the affidavit's omission of a statement made by the CI to detectives, indicating there were "numerous weapons" at defendant's residence. Defendant argues this omission entitles him to a hearing to determine why this information was concealed.

The Supreme Court has held "that New Jersey courts, in entertaining veracity challenges, need go no further than is required as a matter of Federal Constitutional law by [Franks][.]" State v. Howery, 80 N.J. 563, 568 (1979) (citing Franks v. Delaware, 438 U.S. 154 (1978)).

> The core issue presented in the context of a challenge to an affidavit, where the challenger alleges the affidavit is fatally inaccurate by reason of omission, is whether the information omitted from the affidavit is material. The test for materiality is whether inclusion of the omitted information would defeat a finding of probable cause; it is not . . . whether a reviewing magistrate would want to know the information.
>
> [Smith, 212 N.J. at 399 (citations omitted).]

In Smith, the defendant contested an affidavit containing a statement by a witness identifying him as the shooter in murder. Ibid. The defendant argued the affidavit omitted statements previously made by the witness to police, thus, rendering it invalid. Ibid. The Court concluded the omission did not defeat a finding of probable cause and stated:

The fact that [the witness] may have provided earlier statements to [the detective], in addition to the information [the detective] included ultimately in his affidavit is not, by itself, sufficient to defeat a conclusion of probable cause. Rather, [the witness'] omitted statements must be inserted into the affidavit [the detective] prepared and submitted and an assessment must be made, whether, in that expanded format, the affidavit established probable cause. That assessment, moreover, must take into account the totality of the circumstances[.]

[Id. at 399-400.]

Here, the omission of the CI's statement regarding the weapons in defendant's home would not defeat probable cause. Inserting the omitted statement into Ribeiro's affidavit would not have contradicted defendant's statement that he possessed cocaine for sale, or the police observation of the drug transaction.

III.

Lastly, defendant contends the motion judge's denial of a motion to reveal the identity of the CI was erroneous and unfairly limited defendant's ability to challenge the legality of the search warrant. Since the judge's decision regarding the identity of the CI turns upon an evidential privilege, we review the determination for an abuse of discretion. State v. Sessoms, 413 N.J. Super. 338, 342 (App. Div. 2010).

13

The purpose of the [confidential informant] privilege is to encourage and secure a flow of vital information which can be had only upon a confidential basis. Recognizing the obligation of citizens to communicate their knowledge of criminal offenses to law enforcement officers the privilege encourages the citizens to perform this obligation by preserving their anonymity.

State v. Roundtree, 118 N.J. Super. 22, 30 (App. Div. 1971).[2]

Furthermore,

[a] witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this State or of the United States to a representative of the State or the United States or a governmental division thereof, charged with the duty of enforcing that provision, and evidence thereof is inadmissible, unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his identity is essential to assure a fair determination of the issues.

[N.J.R.E. 516.]

Disclosure is also required when "the informer is an active participant in the crime for which [the] defendant is prosecuted[.]" State v. Foreshaw, 245

_____

[2] In Roundtree, disclosure of the CI was required because "[t]he informer was an active participant in the transaction and a material witness on the issue of defendant's guilt." 118 N.J. Super. at 32.

N.J. Super. 166, 180-81 (App. Div. 1991) (citing State v. Oliver, 50 N.J. 39, 42 (1967)).  However, "[i]t is now well established that 'absent a strong showing of need, courts generally deny disclosure where the informer plays only a marginal role, such as providing information or "tips" to the police or participating in the preliminary stage of a criminal investigation.'"  State v. McDuffie, 450 N.J. Super. 554, 567 (App. Div. 2017) (quoting State v. Milligan, 71 N.J. 373, 387 (1976)).

In State v. Burnett, 42 N.J. 377, 388 (1964), the Supreme Court held the Fourth Amendment does not require disclosure of an informant's identity for the sole purpose of challenging "the existence of probable cause" for a search.  See also State v. Brown, 170 N.J. 138, 148 (2001) (upholding a trial court's denial of a request to disclose the CI's identity, where the CI made controlled buys, which the State used as the basis for a search warrant application).

Here, the motion judge concluded:

> [D]efendant provides no legitimate reason for disclosing the identity of the CI other than a belief that exculpatory information may be revealed from the CI's testimony.  With nothing further than that bald assertion, there is simply not enough to overcome the State's interest in maintaining the anonymity of the CI, since there is insufficient proof to establish disclosure is essential.

A-5553-16T3

We agree. The CI was not a material witness because police independently observed the controlled drug buy. Moreover, defendant's arrest was due to the discovery of CDS and paraphernalia in defendant's residence, not the transaction between the CI and defendant outside of defendant's residence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5553-16T3