264 N.J. Super. 91 (1993)
624 A.2d 42
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
DARRYL JEROME SALLEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted March 23, 1993.
Decided April 26, 1993.
*92 Before Judges MICHELS, BILDER and BAIME.
*93 Clifford J. Minor, Essex County Prosecutor, attorney for appellant (Virginia M. Lincoln, Assistant Prosecutor, of counsel and on the letter-brief).
Dell'Italia, Affinito, Jerejian & Santola, attorneys for respondent (Robert S. Miseo, of counsel and on the letter-brief).
The opinion of the court was delivered by BAIME, J.A.D.
The State appeals from the Law Division's order dismissing an indictment which charged defendant with possession of a sawed-off shotgun (N.J.S.A. 2C:39-3b) and possession of cocaine (N.J.S.A. 2C:35-10a(1)). The indictment was dismissed because the State refused to comply with an order requiring the police to disclose the identity of a confidential informant. The State contends that the anonymity of the informant should be preserved to avoid the risk of retaliation. We agree and reverse the Law Division's order.

I.
Unfortunately, our review of this case has been hampered by the truncated nature of the record submitted to us. The gist of the State's charges was that a confidential informant, under a prearranged plan with the police, lured defendant from his apartment by feigning interest in purchasing a shotgun which allegedly had been used in a series of robberies. According to the State's version, while engaged in their surveillance, the police observed three males conversing outside of defendant's building: the informant, defendant, and a third person later identified as Jay Smith. Defendant allegedly entered the building and returned shortly thereafter, brandishing a black sawed-off shotgun. The police arrested all three individuals and placed them in a patrol car. An unrelated arrest of another individual was then made and all of the suspects were transported to the tactical squad room at police headquarters. After a brief period, Smith and the informant were set free.
*94 Defendant's version of the incident was markedly different. He claimed that the police raided the apartment and arrested him only when he refused to disclose the whereabouts of his brother. According to the defense's account, no conversation took place outside the building and defendant never had possession of the shotgun. In essence, defendant claimed that there was no informant and the arresting officers' description of the incident constituted pure fabrication. To support his claim, defendant was prepared to present Smith and other residents of the apartment building as witnesses.
We gather from the record that the prosecutor and defense counsel entered into an agreement not to mention the informant's role in luring defendant from the apartment building. The trial commenced on that basis. Following opening statements, the State presented its first witness, the police officer who had allegedly planned the arrest with the informant. The officer testified that he and several detectives embarked upon a surveillance of the building based "upon certain information he had received." See State v. Bankston, 63 N.J. 263, 268, 307 A.2d 65 (1973). According to the officer, from the vantage point of his unmarked patrol car, he observed three males standing adjacent to the entrance of the apartment building. At this point, the trial was interrupted because the defense attorney was required in another court.
When the trial resumed, the prosecutor complained to the judge that defense counsel, in his opening statement, had breached the agreement not to allude to the informant. We have not been presented with a transcript of the opening statement and the colloquy concerning defense counsel's allegedly wayward remarks is extremely obscure. The point is unimportant except that it prompted the Law Division judge to suggest sua sponte that defendant was entitled to disclosure of the identity of the informant. On his own motion, the trial judge conducted an Evid.R. 8 hearing, eliciting testimony from the arresting officer that he knew the informant only by his first name, that he had received information from him on at least five prior occasions and that he *95 generally paid him for the "tips" he revealed. Following the hearing, the judge granted a mistrial and ordered the prosecutor to disclose the name, address and social security number of the informant.
Based upon the request of the prosecutor, another Evid.R. 8 hearing was later conducted. The arresting officer provided additional testimony relating to his relationship with the informant and the danger of retaliation if his identity were to be divulged. Defense counsel merely reiterated the factual contention that the police raided the apartment building and retrieved the shotgun from an undisclosed place. The attorney reaffirmed his intention to call Smith, who he represented was available to testify, and other residents of the building to corroborate defendant's version of the incident.
Following the hearing, the Law Division judge again directed the prosecutor to provide the defense with the name, address, and social security number of the informant. In reaching this result, the judge expressed doubt that an informant actually existed. The judge also observed that, under the State's version, the informant was a key participant in the criminal event and, in any case, was probably known by the defendant. The indictment was dismissed when the State refused to comply with the court's order. This appeal followed.

II.
We hold that the trial court mistakenly exercised its discretion by compelling the State to disclose the identity of the informant. The informant's privilege had its genesis in the common law, see 2 Underhill, Criminal Evidence § 327 (5th ed. 1956); Donnelly, "Judicial Control of Informants, Spies, Stool Pigeons and Agents Provocateurs," 60 Yale L.J., 1091 (1951), and is now codified in N.J.S.A. 2A:84A-28 and Evid.R. 36 which provide:
A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this State or of the United States to a representative of the State or the United States or a governmental division thereof, charged with the duty of enforcing that *96 provision, and evidence thereof is inadmissible, unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his identity is essential to assure a fair determination of the issues.
The privilege has been applied in both criminal and civil cases and in a variety of factual and legal settings. See, e.g., Grodjesk v. Faghani, 104 N.J. 89, 514 A.2d 1328 (1986); Cashen v. Spann, 77 N.J. 138, 389 A.2d 969 (1978); State v. Oliver, 50 N.J. 39, 231 A.2d 805 (1967); State v. Burnett, 42 N.J. 377, 201 A.2d 39 (1964); State v. Dolce, 41 N.J. 422, 197 A.2d 185 (1964); Morss v. Forbes, 24 N.J. 341, 132 A.2d 1 (1957); State v. Foreshaw, 245 N.J. Super. 166, 584 A.2d 832 (App.Div.), certif. denied, 126 N.J. 327, 598 A.2d 886 (1991); State v. Varona, 242 N.J. Super. 474, 577 A.2d 524 (App.Div.), certif. denied, 122 N.J. 386, 585 A.2d 389 (1990); State v. Siebold, 138 N.J. Super. 87, 350 A.2d 265 (App.Div. 1975); State v. Infante, 116 N.J. Super. 252, 282 A.2d 44 (App.Div. 1971); cf. State v. Garcia, 131 N.J. 67, 618 A.2d 326 (1993); State v. Zenquis, 131 N.J. 84, 618 A.2d 335 (1993).
The privilege rests upon the need to encourage cooperation between the citizenry and the police, State v. Milligan, 71 N.J. 373, 381, 365 A.2d 914 (1976), and to secure a flow of vital information which can be given only upon a confidential basis, State v. Oliver, 50 N.J. at 42, 231 A.2d 805. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officials, and, by preserving their anonymity, encourages them to perform that responsibility. Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639, 644 (1957). Not all such information comes from people of high motivation. State v. Oliver, 50 N.J. at 42, 231 A.2d 805. The police must have the aid of people of lesser quality who respond to selfish inducements. Ibid. Much of the critical information comes from members of the criminal milieu. These people are needed for what they know, as well as for what they can learn because of their associations. Ibid. Whether an informer is motivated by good citizenship, promise of leniency or prospect of pecuniary reward, "he will usually condition his cooperation on an assurance of anonymity." State v. Milligan, 71 N.J. *97 at 382, 365 A.2d 914 (quoting 8 Wigmore, Evidence § 2374 (McNaughton rev. 1961)). The informer, whether good or evil and whether paid or not, is subject to the risk of retaliation which a regular member of the police force ordinarily need not fear. State v. Oliver, 50 N.J. at 42, 231 A.2d 805. Our Supreme Court has aptly observed that "[t]he fears and concerns which have prompted the need to assure anonymity of informers rest on solid factual grounds." State v. Milligan, 71 N.J. at 382 n. 4, 365 A.2d 914. Common experience indicates that the informant's privilege "is well established, and its soundness cannot be questioned." 8 Wigmore, Evidence § 2374, at 762.
Of course, the privilege must be anchored to the reason for its existence and must yield when countervailing policies so dictate. The privilege is inapplicable where disclosure would be "relevant and helpful to the defense of an accused" or "essential to a fair determination" of a criminal or civil case. Roviaro v. United States, 353 U.S. at 60-61, 77 S.Ct. at 627-28, 1 L.Ed.2d at 645; see also State v. Florez, 261 N.J. Super. 12, 617 A.2d 670 (App.Div. 1992); State v. Postorino, 253 N.J. Super. 98, 601 A.2d 223 (App.Div. 1991); State v. Roundtree, 118 N.J. Super. 22, 285 A.2d 564 (App.Div. 1971). The privilege is normally inapplicable where the informer "is an active participant in the crime for which [the] defendant is prosecuted." State v. Milligan, 71 N.J. at 383-84, 365 A.2d 914; State v. Oliver, 50 N.J. at 42, 45, 231 A.2d 805; State v. Roundtree, 118 N.J. Super. at 31-32, 285 A.2d 564. This proposition also holds true "where a defense of entrapment seems reasonably plausible." State v. Milligan, 71 N.J. at 384, 365 A.2d 914; State v. Dolce, 41 N.J. at 435-36, 197 A.2d 185; see also DiBlasio v. Keane, 932 F.2d 1038, 1042-43 (2d Cir.1991). So too, the privilege is inapplicable "where the informer is an essential witness on a basic issue in the case." State v. Milligan, 71 N.J. at 383, 365 A.2d 914; State v. Infante, 116 N.J. Super. at 257, 282 A.2d 44.
In resolving these questions, we seek to accommodate competing social values. No "fixed rule" is possible, Roviaro v. United *98 States, 353 U.S. at 62, 77 S.Ct. at 628, 1 L.Ed.2d at 646, and no particular formula can claim universal verity. Instead, "[t]he problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense" and contest the State's charges. Ibid. "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Ibid.; see also McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62, reh'g denied, 386 U.S. 1042, 87 S.Ct. 1474, 18 L.Ed.2d 616 (1967).
Applying these principles, we conclude that the interests of the State must prevail. Initially, we reject the thesis that the informant was a critical witness or a key participant in the crime. While the role of the informer in allegedly luring defendant from the apartment building was undoubtedly a relevant consideration, it should not be overemphasized. We perceive a difference between a participant in a crime and an individual who is merely present as an observer at the scene.[1]
*99 In Roviaro v. United States, for example, the United States Supreme Court reversed the defendant's conviction for selling and transporting heroin and allowed disclosure of the informer's identity because of his integral role in the crime. The informer had met the defendant at a prearranged location and then, at defendant's direction, had driven to another area where a package was given to the accused. In turn, the defendant gave the package to the informer. In ordering disclosure, the Court emphasized that the informer "played a prominent part" in the crime and was the defendant's "one material witness." 353 U.S. at 64, 77 S.Ct. at 630, 1 L.Ed.2d at 647. The Court observed that the informer "was the sole participant, other than the accused, in the transaction charged" and was the "only witness in a position to amplify or contradict the testimony of government witnesses." Ibid. Other circumstances compelled disclosure as well. As the Court noted, the informer's testimony was critical to a claim of entrapment. Ibid. Moreover, the informer had told several government witnesses *100 that he did not know the defendant and had never seen him before. Id. at 64-65, 77 S.Ct. at 630, 1 L.Ed.2d at 647.
In contrast, our Supreme Court upheld the informant's privilege in State v. Milligan, 71 N.J. at 394, 365 A.2d 914. There, the informer introduced the defendant to an undercover agent and was present while the two negotiated the terms of the sale. Id. at 378, 365 A.2d 914. The informer later drove the agent to the defendant's apartment, left briefly while the sale took place, and reentered immediately thereafter. Id. at 379, 365 A.2d 914. While noting that, "as in Roviaro, the informer [was] the only person ... who could controvert, explain or amplify the testimony of the State's principal witness," id. at 390, 365 A.2d 914, the Court found that his role was not sufficiently prominent to require disclosure, ibid.
Similarly, the privilege was found to be applicable in State v. Oliver, 50 N.J. at 48, 231 A.2d 805. There, the informer accompanied an undercover agent to an illegal gambling hall where bets were being placed. Id. at 41, 231 A.2d 805. This occurred on three separate occasions. Ibid. While recognizing "a remote possibility that [the] informer's testimony might serve" the defendant, the Court refused to compel the State to reveal his identity. Id. at 47-48, 231 A.2d 805.
In State v. Booker, 86 N.J. Super. 175, 206 A.2d 365 (App.Div. 1965), an informer was with the narcotics agent when the defendant approached the vehicle and himself initiated what resulted in a sale to the officer. Id. at 178-79, 206 A.2d 365. In upholding the privilege, we stressed that the mere fact that the informer was present "does not take him out of the protection of the statute." Id. at 179, 206 A.2d 365. Such presence was said to be "only one fact to be taken into consideration with all of the [circumstances] in determining whether `disclosure of his identity is essential to assure a fair determination of the issues.'" Ibid.
Obviously, each case has its own factual nuances and no two are exactly alike. The point to be stressed is that we know of no case holding that an informer must be revealed when he was no *101 more than a witness to the criminal event. Mere presence is not enough. The most the defendant can say here is that he hopes the informer, if called by him, would corroborate his version and destroy the State's case. If that unsupported hope suffices, it is plain that an informer "could no longer serve as a cover or decoy." State v. Oliver, 50 N.J. at 46, 231 A.2d 805. "If a defendant may insist upon disclosure of the informant in order to test the truth of the officer's statement that there is an informant or as to what the informant related or as to the informant's reliability, we can be sure that every defendant will demand disclosure." State v. Burnett, 42 N.J. at 385, 201 A.2d 39. After all, the defendant has nothing to lose and the prize may be the dismissal of the charges if the State cannot afford to reveal its source, as is so often the case. Since there is no way to test the good faith of a defendant who presses the demand, "we must assume the routine demand would have to be routinely granted." Ibid. We must be mindful of the ease with which the privilege would be destroyed and the supply of relevant information diminished if disclosure were the norm. Not much would remain of the informer's privilege and its underlying social benefit. The exception would exhaust the whole. Instead, we accept the premise that the informer "is a vital part of society's defensive arsenal" and, whatever his motive, requires protection against retaliation. Ibid.
The informant's privilege is not absolute. If fairness requires that the privilege have no greater sway, then the answer is obvious. Here, however, defendant's need for disclosure of the informant's identity is highly questionable. Indeed, to our knowledge, defendant did not request disclosure until the trial court's intervention. From the record presented to us, it appears that many individuals were present at the time of the arrest and were fully available to testify at trial. While it is true that the informant's identity is now only "thinly concealed," State v. West, 145 N.J. Super. 226, 232, 367 A.2d 453 (App.Div. 1976), certif. denied, 73 N.J. 67, 372 A.2d 332 (1977), the State nevertheless has an interest in barring disclosure of his true identity. Disclosure of information pertaining to the informant's actual name, address *102 and social security number might well enable the defendant to engage in acts of retaliation. We are satisfied that the strong public policy against disclosure must prevail.
Reversed.
NOTES
[1] The federal courts also recognize the distinction and have strongly upheld the informant's privilege. See United States v. Cooper, 949 F.2d 737, 749 (5th Cir.1991) (nondisclosure of informant's identity upheld because he was neither a witness nor participant), cert. denied, ___ U.S. ___, 112 S.Ct. 2945, 119 L.Ed.2d 569 (1992); United States v. Bowser, 941 F.2d 1019, 1022 (10th Cir.1991); United States v. Singh, 922 F.2d 1169, 1172 (5th Cir.), cert. denied, ___ U.S. ___, 111 S.Ct. 2066, 114 L.Ed.2d 471, and cert. denied sub nom., Khanna v. U.S., ___ U.S. ___, 112 S.Ct. 260, 116 L.Ed.2d 214 (1991); United States v. Martinez, 922 F.2d 914, 921 (1st Cir.1991); United States v. Moralez, 917 F.2d 18, 19 (10th Cir.1990); see also United States v. Blevins, 960 F.2d 1252, 1258 (4th Cir.1992) (although informant observed all crucial events and was characterized as a "supporting player" to the investigators, nondisclosure of his identity was upheld); United States v. Mabry, 953 F.2d 127, 131-32 (4th Cir.1991) (informer's identity could not be disclosed even though he introduced defendant to the agent who purchased the cocaine), cert. denied, ___ U.S. ___, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992); United States v. Harrington, 951 F.2d 876, 878 (8th Cir.1991) (nondisclosure upheld where informant made controlled purchases of cocaine from defendant); United States v. Gutierrez, 931 F.2d 1482, 1490-91 (11th Cir.) (although informant's participation was "substantial," nondisclosure was affirmed), cert. denied, ___ U.S. ___, 112 S.Ct. 321, 116 L.Ed.2d 262, and cert. denied sub nom., Palacio v. U.S., ___ U.S. ___, 112 S.Ct. 398, 116 L.Ed.2d 347-48, and cert. denied sub nom., Palma-Rodriguez v. U.S., ___ U.S. ___, 112 S.Ct. 403, 116 L.Ed.2d 352 (1991), and cert. denied sub nom., Rogue v. U.S., ___ U.S. ___, 112 S.Ct. 905, 116 L.Ed.2d 806 (1992); United States v. Batista-Polanco, 927 F.2d 14, 20 (1st Cir.1991) (informant's presence during prior drug transactions was insufficient to defeat the privilege); United States v. Williams, 898 F.2d 1400, 1402 (9th Cir.1990) (purchased small quantities from defendant; nondisclosure affirmed); United States v. Alexander, 761 F.2d 1294, 1303 (9th Cir.1985) (one informant visited defendant's ranch; nondisclosure upheld); United States v. Brinkman, 739 F.2d 977, 981 (4th Cir.1984) (two important discussions between defendant and informant were insufficient to require disclosure of informant's identity); United States v. Varella, 692 F.2d 1352, 1356 (11th Cir.1982) (informer was participant in drug transaction, but not integral; nondisclosure enforced), cert. denied sub nom., Gavin v. U.S., 463 U.S. 1210, 103 S.Ct. 3542, 77 L.Ed.2d 1392, and cert. denied, 464 U.S. 838, 104 S.Ct. 127, 78 L.Ed.2d 124 (1983); United States v. Ward, 722 F. Supp. 1523, 1524-25 (S.D.Ohio 1989) (although informant was directly involved, because life was threatened nondisclosure was upheld); but see United States v. Palacios, 763 F. Supp. 380, 381 (N.D.Ill. 1991) (disclosure of identity ordered because of informant's direct participation).